UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRELL ODEN,<br><br>            Plaintiff,<br><br>      v.<br><br>J. REED,<br><br>            Defendant. | Case No. 22-cv-06980 BLF (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 14) |

Plaintiff, a state prisoner, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983, against officers at the Correctional Training Facility ("CTF"). Dkt. No. 1. The Court found the complaint stated a cognizable retaliation claim against Defendant Reed but dismissed a state law claim against Defendant Peffley, who was terminated from the action. Dkt. No. 7.

Defendant Reed filed a motion for summary judgment on the grounds that there are no genuine issues of material fact in support of Plaintiff's retaliation claim, that Defendant is entitled to judgment as a matter of law, and Defendant is entitled to qualified immunity.[1]

---

[1] In support of his motion, Defendant submits declarations from the following: Defendant's counsel, Deputy Attorney General Daniel Duan, with a copy of Plaintiff's

Dkt. No. 16. Plaintiff filed an opposition, Dkt. No. 17, which is supported by his declaration, Dkt. No. 18, and exhibits, which includes a copy of the complete transcript of his deposition, Dkt. No. 19. Defendant filed a reply, with another declaration from counsel and an exhibit. Dkt. Nos. 21, 21-1.

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## DISCUSSION

I. **Statement of Facts**[2]

Plaintiff is currently housed at CTF, where the underlying events of this action took place. Defendant Reed was a correctional lieutenant at CTF at the time. Reed Decl. ¶ 1, Dkt. No. 15-2.

On March 12, 2021, CTF's Investigative Services Unit ("ISU") Officer Z. Brown (a non-party) conducted a search of cell 116, which was solely occupied by Plaintiff. Duan Decl., Ex. C; Dkt. No. 15-1 at 17. On the same day, Officer Brown issued a Rules Violation Report ("RVR") to Plaintiff, charging him with possession of a cellular phone which he found during the cell search. *Id.* Plaintiff denied that the cell phone belonged to him. *Id.* On April 3, 2021, a disciplinary hearing was held on the RVR. *Id.* at 21. The senior hearing officer ("SHO"), Officer K. Mensing, found Plaintiff guilty of the charge on a preponderance of evidence because Plaintiff was solely responsible for his cell and therefore presumed to be in possession of anything found within it. *Id.* at 25.

On May 1, 2021, Plaintiff filed a grievance (Log No. 114145) challenging that RVR. Duan Decl., Ex. C; Dkt. No. 15-1 at 6-8. In the grievance, Plaintiff complained of a

---

relevant grievance (Ex. C), and relevant portions of the transcript of Plaintiff's deposition (Ex. D), Dkt. No. 15-1; and Defendant J. Reed ("Reed Decl.") with a copy of the relevant Rules Violation Report (Ex. A), and related disciplinary hearing results (Ex. B), Dkt. No. 15-2.

[2] The following facts are undisputed unless otherwise indicated.

2

due process violation related to the RVR hearing for Log No. 7069506. *Id.* at 17-18. Plaintiff complained that his due process rights were violated because the SHO "placed significant amount of weight" in another inmate's testimony, and Plaintiff did not receive all the evidence he requested. *Id.* at 8. Plaintiff mentioned Officer Brown as the one who allegedly took "multiple picture evidence" which Plaintiff had requested but did not receive. *Id.* The institution's response dated May 25, 2021, found that no due process or procedural violations occurred during the disciplinary proceedings because Plaintiff received all the evidence and the reference to another inmate was a typographical error. *Id.* at 32. The appeal response, dated August 18, 2021, denied Plaintiff's claim, finding that the description of the photographs taken matched the photographs updated into the SOMS, and that Plaintiff was provided those photographs more than 24 hours prior to the hearing. Dkt. No. 21-1 at 4. The appeal decision also found it credible that the reference to another inmate was a typographical error, and that there was no "mix-up" in the findings or disposition by the SHO. *Id.* There was no mention of Officer Brown in the institution's response or the appeal response. *Id.*

On June 4, 2021, Officer Brown issued a Rules Violation Report ("RVR") (Log No. 7092910), charging Plaintiff with "theft of state funds valued in excess of $400." Reed Decl., Ex. A; Dkt. No. 15-2 at 6-9. Officer Brown stated that CTF's ISU completed an investigation into Plaintiff's involvement for fraudulent EDD benefits on June 3, 2021. *Id.* at 6. As part of the investigation, Officer Brown and several other officers had conducted a search of Plaintiff's cell on March 12, 2021, which yielded the black cell phone discussed above. *Id.*; *see supra* at 2. Officer Brown also discovered a notebook in the upper bunk containing handwritten notes of personal identifying information ("PII") (names, social security numbers, drivers license numbers, date of births, addresses, phone numbers, and email addresses). *Id.* Officer Brown stated that he compared the information found in the notebook and found the same information in an EDD spreadsheet, indicating that unemployment benefits were applied for using the inmates' information.

3

1   *Id.* Officer Brown also discovered that the addresses found in the notebook and the EDD
2   spreadsheet were the addresses found in the Strategic Offenders Management Systems
3   ("SOMS") database for the inmates' approved visitors. *Id.*
4     The discovered cell phone was sent to a forensics team. *Id.* The results of the
5   digital extraction showed that the cell phone contained EDD person profile information for
6   one inmate as well as Plaintiff. *Id.* In addition, the extraction revealed that the cell phone
7   had accessed the EDD website multiple times between December 31, 2020, and January
8   25, 2021. *Id.*
9     The disciplinary hearing on the RVR Log No. 7092910 was postponed on June 4,
10  2021. Dkt. No. 15-2 at 11. The reason of the postponement is not indicated. *Id.* The
11  report also indicates, "hearing postponement revoked by inmate" on February 23, 2022.
12  *Id.* The hearing finally took place on March 15, 2022, with Defendant Reed presiding as
13  the SHO. *Id.*; Reed Decl. at ¶ 5. The hearing was suspended a few minutes after it began
14  to allow for shift change and witness availability, as Plaintiff requested the reporting
15  employee, Officer Brown, as a witness. Dkt. No. 15-2 at 15. The hearing resumed on
16  March 17, 2022. *Id.* At the hearing, Plaintiff presented evidence and was able to have
17  Officer Brown answer questions over the phone. *Id.* In sum, Plaintiff's defense was that
18  he did not receive any money and that Officer Brown had manipulated the evidence to
19  falsely accuse him. *Id.* at 17.
20    At the conclusion of the hearing, Defendant Reed determined that the written and
21  material evidence provided by ISU was not sufficient to support a finding that Plaintiff
22  engaged in theft of state funds in excess of $400 because the spreadsheet indicating the
23  alleged amounts of the theft was incomplete and the dollar amount could not be confirmed.
24  *Id.* at 18. However, Defendant Reed found the preponderance of evidence was sufficient
25  to support a finding of guilt for fraud. Reed Decl. ¶ 8, Ex. B; Dkt. No. 15-2 at 19, 20.
26  Specifically, Defendant found that the evidence submitted by ISU staff found in Plaintiff's
27  solely occupied cell included a cell phone and a notebook that contained PII related to four

inmates assigned to CTF, which supported a guilty finding. *Id.* In addition, Defendant considered the forensic evidence from the cell phone, which showed that the EDD homepage, login, and logout, and profile access were conducted on the phone, and included the establishment of accounts for the four inmates found in the notebook. *Id.* Based on this evidence, Defendant Reed found the evidence supported that Plaintiff had access to other inmates' personal identifying information and that EDD claims were filed for five inmates whose information mostly corresponds to the information in the notebook that was discovered in Plaintiff's cell. *Id.* Accordingly, Defendant Reed concluded that the evidence supports Plaintiff being the creator of the fraudulent claims. *Id.*

According to Defendant, because of the limitations to the SOMS database, Defendant could not select "Other Felony – Fraud" as a choice when generating the hearing results as it was not available as a drop-down menu option. Reed Decl. ¶ 9, Ex. B; Dkt. No. 15-2 at 22. Therefore, in order to complete the results document, Defendant selected the category "CONSPIRED TO COMMIT A FELONY PC 182," and explained in the notes that "this matter is NOT a conspiracy, but due to selection limitations, the charge is shown as such." *Id.* at 18. Defendant Reed indicated "Other Felony - Fraud" three separate times throughout the hearing results. *Id.* at 18, 19, 22.

According to Plaintiff, Defendant Reed failed to document in the hearing results something she had stated to him towards the end of the hearing. Oden Decl. ¶¶ 6, 9, Dkt. No. 18 at 2. Specifically, Defendant stated that "she was going to find me guilty of something because I filed a 602 against Sergeant Brown about a phone I knew Brown found in my cell." Oden Decl. ¶ 6, Dkt. No. 18 at 2; Pl.'s Dep. at 78:7-25, 79:1-4, Dkt. No. 19 at 39. There was no one else in the room at the time. Pl.'s Dep. at 38:23-25, 39:1. Plaintiff believed Officer Brown and Defendant Reed knew each other because their offices were in the same wing. *Id.* at 40:5-23. Plaintiff admitted having no personal knowledge of how Defendant Reed learned about the grievance but believed Defendant Reed had spoken with Officer Brown or had looked up the grievance on the computer. *Id.*

5

at 41:8-13, 84:3-22. Plaintiff also states that two other inmates were charged with identical charges, "utilizing identical evidence, yet all those inmates were found NOT GUILTY of ALL charges," and that therefore the only reason he was found guilty was because he filed a grievance. Oden Decl. at ¶ 10. Plaintiff asserts that Defendant Reed "has [a] well known reputation for manipulating inmates' disciplinary hearing results." *Id.* at ¶ 7.

According to Defendant Reed, she made no such statement during the hearing regarding a grievance filed against Officer Brown. Reed Decl. ¶ 8, Dkt. No. 15-2 at 3. Defendant Reed denied having any knowledge of Plaintiff's grievance against Officer Brown or any other staff involved, at any time prior to, during, or after the issuance of the RVR, nor was she involved in that grievance. *Id*. at ¶ 7. Defendant Reed states she not find Plaintiff guilty of the RVR because of his filing of grievances against staff, but rather, based on the evidence outlined in the hearing results. *Id.* at ¶ 9.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.*

**A.**     **Retaliation**

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The prisoner must show that the type of activity he was

engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

It is undisputed that Plaintiff's allegations satisfy the first, third, and fourth elements; it is the second and fifth elements that are at issue. Defendant first asserts Plaintiff cannot establish causation because there is no record to support that the guilty finding was a result of Plaintiff filing a grievance against Officer Brown. Dkt. No. 15 at 10. Second, Defendant asserts that even if Plaintiff demonstrates that Defendant had knowledge of any grievance against Officer Brown, there is no evidence to show a genuine issue of material fact as to the legitimate penological interest in finding him guilty of the RVR. *Id.*

### 1. Causation

Causation requires showing that the prison official intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate, as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-91 (9th Cir. 2016) (finding genuine issue of material fact as to whether defendant sent inmate to ad seg with intent to (1) follow 15 Cal. Code Regs. § 3335(a) or (2) retaliate for inmate's complaint about staff misconduct). To prevail on a retaliation claim, "plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendants' motivation. *Id.* (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir.2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation,

8

(2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendants for the adverse action were false and pretextual. *McCollum v. California Department of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir.2011) (citing *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

The burden then shifts to defendant to show "'by a preponderance of the evidence that [he] would have' taken the same action 'even in the absence of the protected conduct.'" *Riley v. Roach*, 572 F.App'x 504 (9th Cir. 2014) (quoting Mt*. Health City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Defendant asserts that the record shows Defendant Reed found Plaintiff guilty of fraud based on the evidence presented at the hearing. Dkt. No. 15 at 10. Defendant denies knowing that Plaintiff filed a grievance against Officer Brown or any other staff, as she was not involved in that matter and the subject grievance did not even mention Officer Brown. *Id.* Defendant asserts she did not work in the same department as Officer Brown nor oversee him, and that she was not involved with the ISU. *Id.* Defendant also asserts Plaintiff's claim is based on a misunderstanding that Defendant did something wrong when she found him guilty of another charge which was not on the SOMS system. *Id.* Defendant also contends Plaintiff never filed a grievance against Officer Brown, and that the grievance on which Plaintiff relies, Log No. 114145, did not contain any specific complaint against Officer Brown. *Id.* at 12. Lastly, Defendant asserts that there was ample basis for Defendant Reed's guilty finding of Plaintiff's RVR based on state regulations, and that Plaintiff's grievance was not the primary or even a motivating factor in her decision. *Id.*

In opposition, Plaintiff asserts that it was Defendant Reed's "own retaliatory

remarks, declarations from multiple prisoners with personal knowledge regarding Reed's penchant to retaliate, Reed's modus operandi, Reed's failure to adhere to CDCR's Senior Hearing Officers Manual Guidelines, and other admissible evidence in demonstrating causation." Dkt. No. 17 at 4-5. Plaintiff submits the declaration of two inmates who attest that Defendant Reed made similar retaliatory comments during their respective disciplinary hearings, for their filing staff complaints and lawsuits. Dkt. No. 19 at 48-54. Plaintiff asserts that his deposition and declaration establish a triable issue as to whether Defendant knew about his grievance against Officer Brown "for which Reed expressed her disklike for at the RVR hearing." Dkt. No. 17 at 5.

In reply, Defendant asserts that the declaration of the two other inmates should be struck as irrelevant because they do not speak to any relevant facts of this case. Dkt. No. 21 at 2. Defendant asserts that what remains of Plaintiff's opposition are speculations and assumptions, which is undermined by the evidence to the contrary. *Id.* at 2-3. Furthermore, Defendant asserts that Plaintiff's allegation that Officer Brown, working as a sergeant under Defendant Reed, resulted in her knowledge of the grievance is speculative. *Id.* at 4. Officer Brown was promoted to sergeant on February 28, 2022, and a few months afterward, he was assigned to a different institution. Duan Reply Decl. ¶ 2, Dkt. No. 21-1 at 2. Defendant points out that Plaintiff's grievance, Log No. 114145, had a final appeal response on July 13, 2021, which found no due process violations. Dkt. No. 21 at 4. Defendant concludes that six months before Officer Brown was even promoted to sergeant, Plaintiff's grievance was resolved and did not result in any negative issues for Officer Brown. *Id.* Therefore, Defendant asserts that Plaintiff has no personal knowledge or any evidence that Defendant Reed had motive to retaliate against Plaintiff, whose speculation is based on access and proximity. *Id.*

After a careful review of the evidence and construing it in the light most favorable to Plaintiff, the Court finds there is an absence of a genuine dispute of material fact on causation. Specifically, although there is a genuine dispute as to whether Defendant Reed

made a statement which indicated retaliatory intent, that dispute is not material because even assuming she had retaliatory intent, there is no genuine dispute that it was the substantial or motivating factor for her finding Plaintiff guilty of fraud.

      Firstly, it is disputed whether Defendant Reed had retaliatory motive. Plaintiff consistently alleged in the complaint, deposition, and declaration that Defendant Reed stated, "I'm going to find you guilty of something, Oden, because you 602'd Z. Brown about the phone that you knew he found in your cell." Pl.'s Dep. at 79:1-4, Dkt. No. 19 at 39. This alleged statement goes directly to causation, *i.e.*, that Defendant Reed found him guilty, at least in part, *because of* Plaintiff's protected conduct. Although Defendant Reed denies making this statement, the Court must not make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Furthermore, the inferences drawn from the facts must be viewed in a light most favorable to Plaintiff. *Id.* at 631. Therefore, the inference to be drawn from Defendant Reed's alleged statement is that she had knowledge of Plaintiff filing a grievance against Officer Brown about the phone in Plaintiff's cell. Defendant contends that Plaintiff is merely speculating as to *how* she became aware of that fact. However, it is not material how Defendant Reed came to the knowledge; her alleged statement is sufficient to infer that she knew that Plaintiff had filed a grievance. For the same reason, it matters not that Plaintiff's grievance Log No. 114145 did not involve a specific claim against Officer Brown. It is sufficient that Defendant Reed allegedly believed that Plaintiff had filed *a* grievance against Officer Brown involving a cell phone which is what allegedly caused her to take the adverse action against him. Accordingly, the Court finds there is a genuine dispute over whether Defendant Reed made such a statement that indicated retaliatory motive.

      However, even if Defendant Reed had *some* retaliatory motive, the undisputed evidence shows that it was not the "substantial" or "motivating" factor behind her decision to find Plaintiff guilty of fraud; rather, she would have taken the same action even in the

absence of the protected conduct. *Hines*, 108 F.3d at 267-68; *Riley*, 572 Fed.App'x at 506. The disciplinary hearing results show that Defendant Reed conducted a detailed review of the relevant statutes and the evidence submitted to support the RVR for "theft of state funds in excess of $400." *See supra* at 4-5; Dkt. No. 15-2 at 18-20. The relevant statutes included EDD instructions regarding what constitutes fraud, and sections from the Unemployment Insurance Code and the Penal Code. *Id.* at 18. The evidence included the RVR, Officer Brown's Incident Report, photographs, medical reports of injury, Officer Brown's testimony during the hearing, and Plaintiff's defense and his evidence in support. *Id.* at 19-20. Defendant Reed stated in her review which evidence would be considered or not considered, and what weight certain evidence carried. *Id.* Based on the preponderance of this evidence, Defendant Reed concluded that the evidence was not sufficient to support a charge of theft of state funds in excess of $400. For example, Defendant Reed chose not to rely on an "EDD spreadsheet" because Officer Brown's testimony indicated that the spreadsheet was incomplete such that the amount of the alleged theft could not be ascertained. *Id.* at 19. She also considered Officer Brown's testimony that he could not recall whether any money was awarded by the EDD as well as Plaintiff's assertion that there was no proof he received money from EDD. Based on the preponderance of the evidence, Defendant Reed determined that the evidence did not support the charge for theft of state funds in excess of $400.

On the other hand, Defendant Reed found that the evidence was sufficient to support an included charge for fraud under the relevant state statutes. *Id.* at 20. The information from the EDD spreadsheet was still sufficient to link the PII of five inmates contained in the notebook found in Plaintiff's cell with the fraudulent EDD claims. *Id.* Furthermore, the cellphone discovered in Plaintiff's cell contained information of EDD login and logout activity in addition to claimant account history and personal profiles. *Id.* Based on the preponderance of the evidence, Defendant Reed found the evidence showed "that [Plaintiff] was the creator of the fraudulent claims." *Id.* at 20.

Plaintiff's evidence in opposition is not significantly probative on this issue as he merely points to Defendant Reed's "penchant to retaliate" and other inmates' accounts in this regard. Plaintiff does not otherwise challenge the weight of the evidence establishing fraud in the disciplinary hearing at issue. He asserted during deposition that Defendant Reed "came up with a charge" that is not in the SOMS because "she didn't have no evidence to find me guilty under an original charge." Pl.'s Dep. at 55:22-25, Dkt. No. 33. Plaintiff relies on the fact that Defendant selected "CONSPIRED TO COMMIT A FELONY PC 182" in the SOMS, which referenced CCR 3323(d)(10), which he contends is not a "lesser included charge" for the theft of state funds. However, Defendant Reed's legal basis for the charge of fraud is clearly laid out in the disciplinary hearing results and the specific charge of "Other Felony – Fraud" was stated three separate times throughout the hearing notes. Dkt. No. 15-2 at 18, 19, 22. Nor do the declarations from the other inmates in anyway challenge or undermine the weight of the evidence used to find Plaintiff guilty of fraud. Accordingly, the evidence does not support Plaintiff's assertion that Defendant Reed "came up" with a charge for no other reason than to retaliate against him. As discussed above, even if Defendant Reed had some retaliatory motive, the evidence here shows that it was not a substantial or motivating factor behind her decision to find Plaintiff guilty of fraud but rather the weight of the evidence before her. Accordingly, Defendant's motion for summary judgment on this ground should be granted.

### 2. Legitimate Penological Interest

The prisoner "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). The Court must "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (internal quotations omitted). In evaluating the existence of a legitimate correctional goal, there must be a valid, rational connection

13

between the rule, regulation, or action and the legitimate, neutral governmental interest put forward to justify it. *Brodheim*, 584 F.3d at 1272-73. Prison officials cannot simply articulate a general justification for their actions; they must show why their particular action was reasonably related to the legitimate interest. *Shepard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) (defendants must show that they placed plaintiff in administrative segregation because there were witnesses in general population whom he could have improperly influenced; not enough to simply assert that administrative segregation generally helps keep prisoners safe and investigations untainted). Courts must also consider whether there were ready alternatives to the retaliatory action for achieving the governmental objectives. *Brodheim*, 584 F.3d at 1272.

Defendant asserts that under Ninth Circuit precedent, "preserving institutional order, discipline, and security are legitimate penological goals that, if they provide the motivation for an official act taken, will defeat a claim of retaliation." Dkt. No. 15 at 13, citing *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). Defendant asserts that discouraging inmates from engaging in fraudulent activity, especially when the fraud is committed against the state, advances a legitimate correctional goal, and charging an inmate with violating these rules is reasonable related to this goal. *Id.* Defendant also asserts that holding a disciplinary hearing and finding Plaintiff guilty of fraud was necessary to assure that fraudulent activity does not arise from within the institution and preserves the order and discipline of the institution. *Id.* Lastly, Defendant asserts that Plaintiff even admits, absent his misunderstanding of the SOMS limitation, that Defendant Reed's guilty finding would be appropriate and would serve a penological purpose. *Id.*, citing Pl.'s Dep. 86:11-23; 90:19-23.

In opposition, Plaintiff asserts that Defendant "cannot simply articulate a general justification for a neutral process when there is a genuine issue of material fact as to whether their actions were taken in retaliation for exercise of constitutional right." Dkt. No. 17 at 5-6. Plaintiff relies on *Bruce* for the proposition that a Defendant may not use an

14

RVR hearing as a "cover or ruse to silence and punish Plaintiff." *Id.* at 6.

In reply, Defendant points out Plaintiff does not dispute that Defendant had a legitimate correctional goal to prevent and discourage inmates from engaging in fraudulent activity and issuing guilty findings as a result of a RVR is related to these goals. Dkt. No. 21 at 4. Defendant also points out that Plaintiff, along with the other inmates charged with theft of state funds in excess of $400, was found not guilty of that charge. *Id.* at 5. Only Plaintiff was found guilty of fraud, while the other inmates were not, due to the evidence found in Plaintiff's cell: the notebook containing PII of other inmates and the cellphone. *Id.* This evidence was found solely in Plaintiff's possession, not with any of the other inmates, and therefore the evidence supported the fraud charge solely against Plaintiff. *Id*.

After a careful review of the evidence and construing it in the light most favorable to Plaintiff, the Court finds there is no genuine dispute as to any material fact regarding the existence of a legitimate correctional goal in Defendant Reed's decision finding Plaintiff guilty of fraud. Plaintiff relies on his belief that Defendant Reed acted contrary to the CDCR's Senior Hearing Officer Manual in finding him guilty of a "made-up infraction" that does not exist in the SOMS. Dkt. No. 18 at 4. However, he ignores subsection (e) "Included Offenses," which specifically provides that "the SHO has the option of finding the inmate guilty of an include offense" which "has the same, or lesser, penalties than the original offense and proving the included offense is part of proving the original offense." *Id.* at 29. Here, proving the theft of state funds involved proving Plaintiff had engaged in fraud as a means of obtaining those funds. Accordingly, the evidence shows that there was no wrongdoing by Defendant Reed under the SHO Manual. Furthermore, contrary to Plaintiff's assertion that Defendant Reed's action advanced no legitimate penological goal, Defendant has shown that the prison has a legitimate correctional goal to preserve institutional order and discipline, and that discouraging inmates from engaging in fraudulent activity, especially against the state, is related to that goal. *See supra* at 14. Defendant has also shown that charging inmates with a rules violation through disciplinary

15

proceedings is reasonably related to this goal. *Id.* Lastly, Defendant Reed's thorough review of the evidence and reasoned decision in the disciplinary hearing results show that it was not a mere "cover or ruse" to silence Plaintiff. *See supra* at 11-12. Accordingly, it cannot be said that the alleged retaliatory action advanced *no* legitimate penological interest. *See Hines*, 108 F.3d at 267-68.

Based on the foregoing, Defendant has established the absence of a genuine issue of material fact with respect to the retaliation claim against her. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff has failed to identify with reasonable particularity any evidence that precludes summary judgment. *See Keenan*, 91 F.3d at 1279. Accordingly, Defendant is entitled to summary judgment. *Id.*; *see Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

For the reasons stated above, Defendant J. Reed's motion for summary judgment is **GRANTED**.[3] Dkt. No. 15. The retaliation claim against Defendant is **DISMISSED** with prejudice.

This order terminates Docket No. 15.

**IT IS SO ORDERED.**

Dated: _August 13, 2024_____

_____
BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.22\06980Oden_grant-msj

---

[3] Because the Court finds no constitutional violation occurred, it is not necessary to reach Defendant's qualified immunity argument.